NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

NASR NASRUDDIN,
                  Plaintiff,

v.

MICHAEL HARRISON, ESQ.,
                  Defendant.

Civ. No. 16-935 (KM)

OPINION

**MCNULTY, U.S.D.J.:**

The plaintiff, Nasr Nasruddin, brings this action *pro se* against a collection attorney, Michael Harrison, Esq., claiming breach of the federal Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692. Now before the Court is Mr. Harrison's motion (ECF no. 22) for summary judgment, pursuant to Fed. R. Civ. P. 56. For the reasons expressed below, Mr. Harrison's motion for summary judgment (ECF no. 22) is GRANTED.

## I. BACKGROUND

### A. Facts[1]

In August 2012, Mr. Nasruddin received medical services at Englewood Hospital Medical Center. (ECF no. 22-2 at 2) In connection with the services he

---

[1] Mr. Harrison submitted a "Statement of Facts" which is mainly a summary of matters of public record, consisting of the relevant procedural history in New Jersey state court. (ECF no. 22-2 at 2 to 4)

1

received, Mr. Nasruddin signed Englewood Hospital and Medical Center's "consent for treatment, assignment of insurance benefits, release of information and financial agreement" form, dated August 13, 2012. (Ex. B, ECF no. 22-4; *see also* ECF no. 26-1)

Paragraph 7 of the form, entitled "Anesthesiology, Pathology, Emergency Room, Radiology, Cardiology, and other professional fee assignment and conditions", states:

> In the event the patient is entitled to benefits of any type arising out of any policy of insurance covering the patient, the said benefits are also assigned to the Anesthesiologist, Pathologist, Emergency Room Physician, Radiologist, Cardiologist, and/or other appropriate physician, I understand that it is the responsibility of the patient to obtain information from his/her insurance company to determine if the above mentioned physicians are participating in the patient's insurance plan. Participation by Englewood Hospital and Medical Center in any given insurance plan does not indicate participation by the above mentioned physicians, I understand that I am responsible to the above mentioned physicians for any charges not covered by my insurance plan.

(Ex. B, ECF no. 22-4 at 2)

Paragraph 8, labeled "Financial Agreement", states

> The undersigned agrees, whether he/she signs as agent or patient, that in consideration of the services rendered to the patient, he/she hereby individually obligates himself/herself to pay the account of the Medical Center in accordance with the regular rates and forms of the Medical Center. I understand that I am responsible to the Medical Center for any charges billed to and not covered by any insurance carrier(s), including any charges denied by insurance carrier for no pre-certification or referral. Should the account be referred for collection after a default, the undersigned agrees to pay costs of collection, including reasonable attorney's fees. All delinquent accounts bear interest at legal rates.

(Ex. B, ECF no. 22-4 at 2)

On or about August 14, 2013, Mr. Harrison, a collection attorney, mailed an initial communication to Mr. Nasruddin seeking to collect the amount due

and owing to Cardiac Surgery Group of Hackensack[2] ("Cardiac Surgery Group") for medical services provided to Mr. Nasruddin. (ECF no. 22-5, Ex. C, Cert. of Harrison ¶4) Mr. Nasruddin did not make a payment on the medical bill. (ECF no. 22-5, Ex. C, Cert. of Harrison ¶5)

On or about July 2, 2015, on behalf of Cardiac Surgery Group, Mr. Harrison filed a lawsuit in the Superior Court of New Jersey, Law Division, Bergen County, Special Civil Part, against Mr. Nasruddin for non-payment of bills for services rendered to Mr. Nasruddin at Englewood Hospital and Medical Center. (ECF no. 22-2 at 2; ECF no. 22-5, Ex. C, Cert. of Harrison ¶6)

During that litigation, Mr. Harrison provided Mr. Nasruddin with a copy of Englewood Hospital and Medical Center's "consent for treatment, assignment of insurance benefits, release of information and financial agreement" form, dated August 13, 2012 and signed by Mr. Nasruddin. (ECF no. 4-1 at 2) He also entered the form into evidence at a subsequent trial. (ECF no. 4-1 at 3) Mr. Harrison, acting on behalf of Cardiac Surgery Group, ultimately prevailed and obtained a judgment against Mr. Nasruddin in the amount of $15,000. (ECF no. 22-2 at 2; ECF no. 22-5, Ex. C, Cert. of Harrison ¶7) Nothing further about the causes of action asserted or the state court's decision appears in the record.

### B. Procedural History

On February 19, 2016, Mr. Nasruddin, acting *pro se*, initiated this federal-court action against the attorney, Mr. Harrison. The complaint alleges that, in connection with the events leading to the state court judgment against Mr. Nasruddin, Mr. Harrison failed to comply with the FDCPA, 15 U.S.C. § 1692. (Compl., ECF no. 1) In particular, Mr. Nasruddin asserts that Mr. Harrison violated six sections of the FDCPA: Sections 1692e, 1692f(1), 1692g, 1692j, 1692k, and 1692i.

---

[2] Mr. Harrison does not explain the relationship between the Englewood Hospital Medical Center and the Cardiac Surgery Group of Hackensack, which he says was the creditor and plaintiff in the state action. Moreover, none of the exhibits he provided give the Court any further insight on the relationship.

3

The allegation here seems to be that, despite receiving letters from Mr. Nasruddin contesting the debt, Mr. Harrison failed to supply him with required information: specifically, any written agreement between himself and Cardiac Surgery Group. Mr. Nasruddin's main argument focuses on the identity of the creditor. In particular, Mr. Nasruddin alleges that the only agreement he ever signed was with Englewood Hospital and Medical Center. However, the creditor on the debt upon which he was sued was Cardiac Surgery Group, not Englewood Hospital and Medical Center.

Mr. Nasruddin asserts that under the FDCPA, he is entitled to see a copy of the alleged payment agreement between himself and Cardiac Surgery Group. He further argues that such an agreement did not exist and that therefore, under the FDCPA, Mr. Harrison had no basis to file a lawsuit against him in New Jersey state court. Mr. Nasruddin also objects to Mr. Harrison's tactics and the state court judge's decisions in the state action. Mr. Nasruddin now asks this Court to vacate the state court judgment because the judgment violates the FDCPA by not being based on a signed contract between Mr. Nasruddin and Cardiac Surgery Group. (Compl. ¶V, Relief).

On March 4, 2016, Mr. Harrison filed a motion to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6). (ECF no. 4) On March 21, 2016, Mr. Nasruddin filed a response (ECF no. 5), and Mr. Harrison filed a reply (ECF no. 6). Mr. Nasruddin then filed what amounts to a surreply (ECF no. 8). On September 27, 2016, this Court issued a memorandum opinion and order denying Mr. Harrison's motion to dismiss the complaint. (ECF no. 9)

Two days after I issued my decision, on September 29, 2016, Mr. Harrison filed an answer to the complaint. (ECF no. 10) On November 29, 2016, the parties filed a joint discovery plan. (ECF no. 13) On December 8, 2016, Mr. Nasruddin sent a letter to Magistrate Judge James B. Clark, III and Mr. Harrison, requesting a copy of the payment agreement between himself and Cardiac Surgery Group, and the name and address of the creditor and the amount of debt. (ECF no. 15) Mr. Nasruddin also reiterated his legal claims under the FDCPA. (ECF no. 15)

4

On March 15, 2017, Mr. Harrison filed a motion to dismiss for failure to comply with discovery obligations pursuant to Fed. R. Civ. P. 37(b)(2)(A)(v). (ECF no. 17) The next day, Judge Clark filed a letter-order reminding the parties that a January 3, 2017 Scheduling Order required the parties to submit a letter outlining discovery disputes before filing a motion. (ECF no. 18; see ECF no. 16 ¶7). Accordingly, Judge Clark terminated Mr. Harrison's motion to dismiss[3], and ordered the parties to submit letters. (ECF no. 18)

Pursuant to Judge Clark's order, on March 20, 2017, Mr. Harrison filed a letter regarding discovery disputes, including having not received Mr. Nasruddin's answers to the interrogatories. (ECF no. 19) On March 23, 2017, Mr. Nasruddin filed an answer to Mr. Harrison's interrogatories. (ECF no. 20)

On April 12, 2017, Mr. Harrison filed the motion for summary judgment, pursuant to Fed. R. Civ. P. 56, that is now before the Court. (ECF no. 22) He attaches three exhibits to the brief. (ECF nos. 22-3 to -5) Exhibit A is a copy of Mr. Nasruddin's answer to Mr. Harrison's interrogatories. (ECF no. 22-3; see also ECF no. 20) Exhibit B is a copy of Englewood Hospital and Medical Center's "consent for treatment, assignment of insurance benefits, release of information and financial agreement" form signed by Mr. Nasruddin and dated August 13, 2012. (ECF no. 22-4; see also ECF no. 26-1)[4] Exhibit C is a certification from Mr. Harrison. (ECF no. 22-5)

On May 19, 2017, Mr. Nasruddin filed a letter in response to Mr. Harrison's motion. (ECF no. 25) On May 31, 2017, Mr. Nasruddin filed a

---

[3] On April 11, 2017, after Judge Clark terminated Mr. Harrison's motion to dismiss, Mr. Nasruddin filed a response to the motion and attached exhibits. (ECF no. 23) Mr. Harrison submitted a reply on April 21, 2017, explaining that "[a]s the only motion filed by the defendant that is currently before the Court is defendant's motion for summary judgment, for the purposes of this reply, the defendant will assume ECF 23 is the plaintiffs opposition to the defendant's motion for summary judgment." (ECF no. 24)

[4] The copy provided by Mr. Harrison includes three pages, and the copy provided by Mr. Nasruddin includes two pages.

5

second letter in response to Mr. Harrison's motion. (ECF no. 26) He attached five exhibits to the letter. (ECF nos. 26-1 to 26-5)[5]

Exhibit 1 includes the following seven documents: 1) a copy of the online profile of the state judge, who handled the medical billing lawsuit in state court, from the website "The Robing Room"; 2) a copy of Englewood Hospital and Medical Center's "consent for treatment, assignment of insurance benefits, release of information and financial agreement" form signed by Mr. Nasruddin and dated August 13, 2012; 3) a letter from Equifax to Mr. Nasruddin regarding Mr. Nasruddin's "reinvestigation request" on the collection agency information on his account[6]; 4) a January 17, 2017 letter from Chase Bank informing Mr. Nasruddin that his credit line was reduced to $4,300, based in part on Mr. Nasruddin's credit report showing a collection balance that is "too high compared to credit limits"; 5) a May 14th letter[7] from Discover rejecting Mr. Nasruddin's application for a personal loan, based in part on the existence of a "derogatory public record or collection filed"; 6) a February 2, 2016 letter from Chase informing Mr. Nasruddin that it received a garnishment order and therefore placed his accounts on hold; and 7) an August 29, 2015 letter from American Express informing Mr. Nasruddin that his credit line was reduced to $1,000, based in part on "a serious delinquency on one of more of [his] accounts." (ECF no. 26-1)

Exhibit 2 includes copies of letters Mr. Nasruddin sent to Harrison, Judge Clark (ECF no. 15), and the Bergen County Superior Court, and mail return receipts from letters Mr. Nasruddin sent to Mr. Harrison. (ECF no. 26-2) Exhibit 3 includes three copies of reminders mailed by the Bergen County

---

[5] A side-by-side comparison of Mr. Nasruddin's May 19, 2017 and the May 31, 2017 submissions shows that they are nearly identical, the differences being that the May 19, 2017 submission includes two additional pages (labeled "Page 2 of 19", and "Page 3 of 19"), and that the May 31, 2017 submission attached exhibits. To the extent they differ, I consider them both. They were not filed timely, which I will overlook in light of the plaintiff's *pro se* status.

[6] This document is identified as being one of two pages. Mr. Nasruddin only provided the first page.

[7] The information identifying the year does not appear on the copy.

Special Civil Part informing Mr. Nasruddin of upcoming court dates. (ECF no. 26-3) Exhibit 4 includes tracking information for certified mail sent to this court, and a certified mail receipt. (ECF no. 26-4) Exhibit 5 includes tracking information for certified mail sent to Harrison, and a certified mail receipt. (ECF no. 26-5)

## II. *ROOKER-FELDMAN*/SUBJECT MATTER JURISDICTION

Mr. Nasruddin alleges that this Court has federal question jurisdiction under 28 U.S.C. § 1331, based upon his FDCPA claims. *See* 15 U.S.C. §1692k(d) (allowing FDCPA claims to "be brought in any appropriate United States district court without regard to the amount in controversy ..."). I am required, however, to raise *sua sponte*[8] any other grounds that may appear to bar the court's subject matter jurisdiction. *See Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 278 (1977); *Nesbit v. Gears Unlimited, Inc.*, 347 F.3d 72, 76–77 (3d Cir. 2003). Upon a closer look of the parties' submissions, it appears that some if not all of Mr. Nasruddin's claims would be barred by the *Rooker-Feldman* doctrine, which is of jurisdictional stature. *See District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 416 (1923).

A federal district court does not sit to hear appeals from state court judgments. *Rooker-Feldman* operates to prevent a disgruntled party in state court litigation from collaterally attacking the results of that litigation in federal court, claiming constitutional or other error. *See also B.S. v. Somerset County*, 704 F.3d 250 (3d Cir. 2013). To put it another way, *Rooker-Feldman* bars "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus., Inc.*, 544 U.S. 280, 284 (2005).

---

[8] Mr. Harrison does not raise jurisdictional arguments in his submissions to this Court.

7

The *Rooker-Feldman* doctrine applies when, "in order to grant the federal plaintiff the relief sought, the federal court must determine that the state court judgment was erroneously entered or must take action that would render that judgment ineffectual." *FOCUS v. Allegheny County Court of Common Pleas*, 75 F.3d 834, 840 (3d Cir. 1996). Thus *Rooker-Feldman* holds that lower federal courts cannot entertain federal claims that (1) were previously adjudicated in state court or (2) are inextricably intertwined with a prior state court decision. *Feldman, supra; Rooker, supra; Guarino v. Larsen*, 11 F.3d 1151, 1156–57 (3d Cir. 1993); *Port Auth. Police Benev. Ass'n v. Port Auth.*, 973 F.2d 169, 178 (3d Cir. 1992). The first alternative, actual adjudication, requires little explanation. As for the second, a federal claim is "inextricably intertwined" with a prior state court decision if "granting the relief requested in the federal action requires determining that the state court's decision is wrong or would void the state court's ruling." *FOCUS*, 75 F.3d at 839-40.

The Third Circuit held that *Rooker–Feldman* deprives a federal court of subject matter jurisdiction where the following four criteria are satisfied: "(1) the federal plaintiff lost in state court; (2) the plaintiff 'complain [s] of injuries caused by [the] state-court judgments'; (3) those judgments were rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the state judgments." *Great Western Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 166 (3d Cir. 2010). The Third Circuit emphasized that "[t]he second and fourth requirements are the key to determining whether a federal suit presents an independent, non-barred claim." *Id.*

Here, these four requirements are satisfied. First, Mr. Nasruddin lost in State court, where a final judgment was entered against him.[9] Second, Mr. Nasruddin's federal complaint enumerates the injuries caused by the state court decision, including "emotional injuries. . . because [his] credit was

---

9   Neither party provides the specific date of the judgment or a copy of the judgment itself. They agree, however, that judgment was entered; indeed, that is the injury of which Mr. Nasruddin complains.

8

destroyed." (ECF No. 1 at 4) Third, the state court judgment was entered before Mr. Nasruddin instituted this federal action on September 21, 2015. Finally, Mr. Nasruddin seeks relief in the form of a review and rejection of the state court's decision. In his complaint, Mr. Nasruddin explicitly asks this Court to vacate the state court judgment. (ECF no. 1 at 4) Throughout his submissions in response to Mr. Harrison's motion for summary judgment, Mr. Nasruddin also repeatedly asserts that the state court judge did not conduct a fair trial, and the judge's ruling violated the federal FDCPA law and New Jersey contract law. (ECF no. 25 at 2 to 3) He recognizes that some of the FDCPA-related arguments that he is now presenting to this Court were also considered, and rejected by, the state judge. The crux of those arguments is that under the FDCPA, he is entitled to see a copy of the (nonexistent) payment agreement between himself and Cardiac Surgery Group. (ECF no. 25 at 3, 12 to 15; ECF no. 26 at 9 to 12)

In short, Mr. Nasruddin primarily argues that the state court judgment was wrong; although he was found liable to pay for surgical services that he received, he says, there is no contract with Cardiac Surgery Group, and he does not in fact owe the money.

Accordingly, *Rooker-Feldman* applies. It bars Mr. Nasruddin's claims that the state judgment is invalid, and any claims asserting damages that flow from the existence of that judgment. To the very great extent that Mr. Nasruddin's claims are not "independent" of the merits of the collection action, this Court lacks subject matter jurisdiction. The proper recourse for addressing such claims is an appeal within the State court system, not a lawsuit against the opposing attorney.

It may be, however, that some of Mr. Nasruddin's claims against Mr. Harrison could be considered "independent" of the state judgment itself, and that I could address them without disturbing the basis of the state judgment itself. I therefore consider Mr. Harrison's substantive arguments on summary judgment.

## III. SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ.P. 56(a); *see also Anderson v. Liberty Lobby*, Inc., 477 U.S. 242, 248 (1986); *Kreschollek v. S. Stevedoring Co.*, 223 F.3d 202, 204 (3d Cir. 2000). In deciding a motion for summary judgment, a court must construe all facts and inferences in the light most favorable to the nonmoving party. *See Boyle v. County of Allegheny Pennsylvania*, 139 F.3d 386, 393 (3d Cir. 1998). The moving party bears the burden of establishing that no genuine issue of material fact remains. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). "[W]ith respect to an issue on which the nonmoving party bears the burden of proof ... the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325.

Once the moving party has met that threshold burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party must present actual evidence that creates a genuine issue as to a material fact for trial. *Anderson*, 477 U.S. at 248; *see also* Fed. R. Civ. P. 56(c) (setting forth types of evidence on which nonmoving party must rely to support its assertion that genuine issues of material fact exist). "[U]nsupported allegations ... and pleadings are insufficient to repel summary judgment." *Schoch v. First Fid. Bancorporation*, 912 F.2d 654, 657 (3d Cir. 1990); *see also Gleason v. Norwest Mortg., Inc.*, 243 F.3d 130, 138 (3d Cir. 2001) ("A nonmoving party has created a genuine issue of material fact if it has provided sufficient evidence to allow a jury to find in its favor at trial."). If the nonmoving party has failed "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, ... there can be 'no genuine issue of

material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 (3d Cir. 1992) (quoting *Celotex*, 477 U.S. at 322–23).

In deciding a motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249, 106 S. Ct. 2505. Credibility determinations are the province of the fact finder. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir.1992).

The summary judgment standard, however, does not operate in a vacuum. "[I]n ruling on a motion for summary judgment, the judge must view the evidence presented through the prism of the substantive evidentiary burden." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254 (1986). That "evidentiary burden" is discussed in the following section.

Here, Mr. Nasruddin, the nonmoving party, is appearing *pro se*. "Where the plaintiff is a pro se litigant, the court has an obligation to construe the complaint liberally." *Giles v. Kearney*, 571 F.3d 318, 322 (3d Cir. 2009) (citing *Haines v. Kerner*, 404 U.S. 519, 520-521 (1972); *Gibbs v. Roman*, 116 F.3d 83, 86 n. 6 (3d Cir. 1997)). I have construed Mr. Nasruddin's pleadings and filings in that liberal spirit. Mr. Nasruddin has made a number of written submissions and exhibits explaining his position; some explicitly are directed to the summary judgment motion and some are not, but I have considered them all in connection with this summary judgment motion. For purposes of this motion, I have credited his factual contentions and exhibits as if they had been contained in or annexed to sworn affidavits.

## IV. DISCUSSION AND ANALYSIS

Mr. Nasruddin's claims arise under the FDCPA. I first discuss claims under section 1692g, which are dismissed on statute of limitations and other threshold grounds. (Section IV.A) I then consider claims under other sections of the FDCPA. (Section IV.B)

11

## A. FDCPA Section 1692g/Statute of limitations

FDCPA claims, like those of Mr. Nasruddin here, must be brought "within one year from the date on which the violation occurs." 15 U.S.C. § 1692k(d). Mr. Harrison raises the statute of limitations in relation to Mr. Nasruddin's claim under Section 1692g.[10]

I find that Mr. Nasruddin's claims under section 1692g(a) are-time barred. *See* 15 U.S.C. § 1692k(d); *Peterson v. Portfolio Recovery Assocs., LLC*, 430 F. App'x 112 (3d Cir. 2011). A claim under 1692g(b) would very likely be time-barred as well, but it fails for the more fundamental reason that the essentials of such a claim are not asserted factually.

Subsection (a) of Section 1692g requires that within five days after the initial communication with a consumer in connection with the collection of a debt, debt collectors must provide to consumers a written notice of (1) the amount of the debt; (2) the name of the creditor to whom the debt is owed; and (3) a statement notifying the consumer that he or she has the right to dispute the validity of the debt within thirty days. 15 U.S.C. § 1692g(a).

It appears from the record that Mr. Harrison sent his initial letter to Mr. Nasruddin seeking to collect the amount due to Cardiac Surgery Group on

---

[10] Section 1692g claims would arise from the initial communications between debt collector and debtor, which in this case occurred in 2013. As to claims arising from the state court lawsuit itself, however, the limitations period would begin to run at or about the time of that lawsuit, which occurred in 2015.

In an unreported 2009 decision, the Third Circuit observed that where "FDCPA claims are premised upon allegations of improper pursuit of debt collection litigation, courts are split as to when the FDCPA's one-year statute of limitations begins to run: some have held that such claims accrue upon filing the underlying collection action, *see Naas v. Stolman*, 130 F.3d 892, 893 (9th Cir. 1997), while others use the date on which the purported debtor was served with the complaint. *See Johnson v. Riddle*, 305 F.3d 1107, 1113 (10th Cir. 2002)." *Schaffhauser v. Citibank (S.D.) N.A.*, 340 Fed.Appx. 128, 130–31 (3d Cir. 2009). The Third Circuit did not settle the question, instead finding that under either approach, the plaintiff's complaint was untimely. *Id.* at 131.

Here, the earlier of the two possible dates (*i.e.*, the filing of the state court collection complaint) is July 2, 2015. The limitations period of one year, then, ran from July 2, 2015, at the earliest. This federal court action was filed on February 19, 2016, well within the limitations period for any claim that arose in July 2015.

12

August 14, 2013. (ECF no. 22-2 at 7; ECF no. 22-5, Ex. C, Cert. of Harrison ¶4).[11] Therefore, the statute of limitations began to run on August 14, 2013 As to a claim under section 1692g(a), which arises from the debt collector's initial letter to the debtor, he is correct. *See Peterson*, 430 F. App'x at 115 (holding that for FDCPA claims based on Section 1692g(a), the statute of limitations begins to run at the point of initial communication). The one-year limitations period ran out on August 14, 2014, but the federal-court complaint was not filed until February 2016. (ECF no. 22-2 at 8)

> Section 1692g(b) provides, in part as follows:
>
> *If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor*, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector.

15 U.S.C. § 1692g(b)(emphasis added).

In order for there to be a violation of subsection(b), then, Mr. Nasruddin must first allege that he contested the debt by contacting Mr. Harrison in writing within thirty days after August 14, 2013. A claim under subsection(b), then, would have arisen in that time frame, and, like a subsection (a) claim, would likely be time-barred.

Speculation is not required, however, because the problem with any subsection (b) claim is more basic. The precondition of any such claim is that the debtor disputed the debt in writing within the statutory 30-day period. Mr. Nasruddin does not allege that he did so. Therefore, the complaint fails to

---

[11] As stated previously, the FDCPA requires that a debt collector either include a validation notice in its initial communication with a consumer or send the consumer a written validation notice within five days of the initial communication. Mr. Nasruddin does not seem to dispute that he received a validation notice. If not, then the statute of limitations would begin to run five days after August 14, 2013. It makes no difference in this case.

13

allege a section 1692g(b) claim upon which relief can be granted. So it is true, as Mr. Harrison implies, that any arguable violation of subsection (b) would have occurred in 2013, and would therefore be time-barred. But more fundamentally, a subsection (b) violation is not alleged at all.

Mr. Nasruddin's claims under section 1692g, then, are dismissed on threshold grounds.

### B. Other FDCPA Claims
#### 1. Elements of FDCPA claim and relevant sections

The purpose of the FDCPA is to "eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). The Third Circuit has recognized that "[a]s remedial legislation, the FDCPA must be broadly construed in order to give full effect to these purposes." *Caprio v. Healthcare Revenue Recovery Grp., LLC*, 709 F.3d 142, 148 (3d Cir. 2013). *See, e.g.,Lesher v. Law Offices of Mitchell N. Kay, PC*, 650 F.3d 993, 997 (3d Cir. 2011); *Brown v. Card Serv. Ctr.*, 464 F.3d 450, 453 (3d Cir. 2006).

To state a claim under the FDCPA, a plaintiff must allege that "(1) she is a consumer, (2) the defendant is a debt collector, (3) the defendant's challenged practice involves an attempt to collect a 'debt' as the Act defines it, and (4) the defendant has violated a provision of the FDCPA in attempting to collect the debt." *Douglass v. Convergent Outsourcing*, 765 F.3d 299, 303 (3d Cir. 2014); *see also Piper v. Portnoff Law Assocs., Ltd.*, 396 F.3d 227, 232 (3d Cir. 2005).

As for element 4, a violation of a provision of the FDCPA, Mr. Nasruddin maintains that Mr. Harrison violated the following three sections: 1692e, 1692f(1), and 1692j.[12]

---

[12] I have already disposed of claims under sections 1692g. *See* Section IV.A, *supra*.

The complaint also cites sections 1692k, and 1692i. These sections do not define substantive violations. Rather, they confer a private cause of action for

14

Section 1692e of the FDCPA prohibits a debt collector from "us[ing] any false, deceptive, or misleading representation or means in connection with the collection of any debt," 15 U.S.C. § 1692e, including false representations as to "the character, amount, or legal status of any debt," *id.* § 1692e(2)(A).[13]

Section 1692f (1) provides that it is a violation of the FDCPA to collect or attempt to collect "any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law."

Section 1692j provides that "[i]t is unlawful to design, compile, and furnish any form knowing that such form would be used to create the false belief in a consumer that a person other than the creditor of such consumer is participating in the collection of or in an attempt to collect a debt such

---

violations of the FDCPA, define remedies, and limit the venue where a debt collection action can be brought.

Section 1692k(a) "sets forth the three standard components of liability for violations" of the FDCPA. *Graziano v. Harrison*, 950 F.2d 107, 113 (3d Cir. 1991) It provides that

> any debt collector who fails to comply with any provision of this subchapter with respect to any person is liable to such person in an amount equal to the sum of—
>
> (1) any actual damage sustained by such person as a result of such failure;
>
> (2)(A) in the case of any action by an individual, such additional damages as the court may allow, but not exceeding $1,000. . .
>
> (3) in the case of any successful action to enforce the foregoing liability, the costs of the action, together with a reasonable attorney's fee as determined by the court. . .

15 U.S.C. § 1692k(a).

> Any debt collector who brings any legal action on a debt against any consumer shall. . . bring such action only in the judicial district or similar legal entity--(A) in which such consumer signed the contract sued upon; or (B) in which such consumer resides at the commencement of the action.

15 U.S.C. § 1692i(a).

[13] Mr. Nasruddin does not specify which subsection of Section 1692e he relies on. The language of the claim suggests that it is brought under Section 1692e(2)(A).

15

consumer allegedly owes such creditor, when in fact such person is not so participating." 15 U.S.C. § 1692j(a).

### 2. Analysis

Although Mr. Nasruddin separately cites sections 1692e, 1692f(1), and 1692j, the claim under each is same: that under the FDCPA, Mr. Harrison was required to, but did not, provide Mr. Nasruddin with a copy of a written agreement between Mr. Nasruddin and Cardiac Surgery Group, the entity that Mr. Harrison represented in the state collection action.

This claim presents no genuine, material issue of fact that would bar summary judgment. Mr. Harrison and Mr. Nasruddin that no such document exists. (ECF no. 22-2 at 7, 9) Mr. Harrison, on behalf of Cardiac Surgery Group, prevailed on his state court claim. The basis on which he prevailed, however, did not include any written agreement between Nasruddin and Cardiac Surgery Group. (There was, however, a signed agreement between Mr. Nasruddin and Englewood Hospital Medical Center, where the surgery was performed.)

Mr. Nasruddin's FDCPA claim, if viewed narrowly, at least has the virtue of avoiding *Rooker-Feldman*. Mr. Nasruddin is alleging a claim independent of the state court judgment itself—*i.e.*, a claim that he was injured by a violation of the FDCPA's disclosure requirement. Such an FDCPA claim, however, cannot succeed. The sides agree that the document does not exist, and never did. The FDCPA does not require "disclosure" of a document that does not exist. No unfair debt collection practice is alleged. No deception is alleged; the evidence is uncontradicted that Mr. Harrison never, whether here or in state court, claimed that such a contract existed or that he was relying on it.

This concession gives away the game, in the view of Mr. Nasruddin. By backing Mr. Harrison into the admission that there is no written contract between Nasruddin and Cardiac Surgery Group, he believes he has proven that he is not required to pay the surgeon who operated on him. It follows, he believes, that the state court collection action was wrongfully instituted by Mr. Harrison and wrongly decided by the state court.

One problem with this broader claim is that it runs afoul of *Rooker-Feldman*, for the reasons stated in Section II, *supra*. It directly attacks the propriety of the state court judgment. Another is that it would also barred by *res judicata*, in that Mr. Nasruddin's assertion of the FDCPA as a defense was considered and rejected by the state court.

Mr. Nasruddin's conclusion does not flow from his premise as a matter of law. Neither party specifies the grounds on which the State judgment was granted. For present purposes, however, it does not really matter whether the judgment rested on contract, a third-party beneficiary theory, quantum meruit, or some other ground. The State court held that under New Jersey law, Cardiac Surgery Group was entitled to payment from Mr. Nasruddin for medical services provided to him at Englewood Hospital Medical Center, and entered judgment. Whether the State court erred in its decision is a question properly pursued, if anywhere, *via* a state court appeal.

Accordingly, I grant summary judgment to Mr. Harrison on all of Mr. Nasruddin's claims.

## V. CONCLUSION

For the reasons set forth above, Mr. Harrison's motion for summary judgment (ECF no. 22) is GRANTED. An appropriate order follows.

Dated: October 11, 2017

KEVIN MCNULTY
United States District Judge